# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL DERRICK EDWARDS,** | ) | Case No. 7:14CV00495 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| **J. B. EADS, ET AL.,** | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Plaintiff Michael Derrick Edwards, proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials deprived him of due process during prison disciplinary proceedings. Upon review of the record, the court finds that the § 1983 action must be summarily dismissed.

I

The parties do not dispute these facts relevant to Edwards' claims.[1] On February 28, 2014, Edwards' assigned cell at Wallens Ridge State Prison was designated as C-6-601B. That morning, between 8:30 and 9:00 a.m., when Edwards and four other inmates arrived at the gym for a Nation of Islam ("NOI") religious meeting, officers conducted a shakedown for weapons. This procedure ended with a strip search of several inmates in the medical holding cell. Officers found a weapon on one of the four inmates. Edwards and other inmates then entered the gym. A few minutes later, Officer Eads and several other officers entered the gym to conduct a pat down. Eads patted Edwards down and then escorted him to the medical holding cell, where Edwards removed his clothes and handed them out to Eads for another strip search. Edwards did not

---

[1] This summary is taken from Edwards' submissions, including his declaration submitted in response to defendants' motion for summary judgment. (ECF Nos. 1, 4, and 35.)

observe Eads find any contraband in his clothes. Thereafter, Edwards was moved to Cell #3 in Pod D-6.

A few hours later, an officer served Edwards with a disciplinary offense report ("DOR") in which Eads charged Edwards with violating Offense Code 102, "possession of a weapon or sharpened instrument." (ECF No. 4, at 16.) Specifically, Eads stated that "[o]n 2/28/14 at approximately 9:35 a.m. I C/O Eads while conducting a shakedown of Offender M. Edwards . . . did discover a sharpened instrument in the offender's pants cuff." (Id.) The report identified the offense location as "N/A – C-6" and identified the officer in charge as Lt. Burgin. (Id.)

Edwards requested and was assigned a staff advisor and requested and received statements from two inmate witnesses. He asked both witnesses only about shakedowns of himself, his cell, and in C-6 pod on the morning of February 28. Hearing Officer Hensley conducted a disciplinary hearing on the 102 charge on March 6, 2014. Edwards pleaded not guilty. Hensley read the charge, and Eads, as the reporting officer, verified that it was correct. Hensley read the inmate witness statements into the record and then asked Eads to testify. Eads stated that the incident occurred at the gym during the NOI service. Edwards pointed out that the DOR gave the location as C-6 pod. Eads then explained that he listed that location because it was Edwards' housing unit prior to the incident. Edwards then stated that the strip search had occurred in the medical holding cell, and Eads agreed with this statement.

Hensley then asked Edwards, "[W]as there a weapon?" (ECF No. 35-1, at 2.)

Edwards answered, "He said it was in a manner as I never seen one." (Id.)

Hensley asked Eads who else was present at the incident, and Eads said, Lt. Burgin. Hensley then asked Edwards if he had anything else to say. Edwards said, "No," but went on to complain that the location on the offense report and Eads' testimony about the location were

inconsistent. Hensley interrupted this discussion, stating his finding that the testimony at the hearing established the medical holding cell as the actual location of the incident. He found Edwards guilty of the offense and started to state his reasons for that finding. Edwards then tried to ask a question. Hensley turned off the tape recorder and told Edwards that he should have asked his question earlier. In support of the guilty finding, Hensley wrote: "Officer Eads stated that he was conducting a search of Offender M. Edwards. During the search he found a homemade weapon in the cuff of his pants. . . . Eads clarified that the location on the report was the offender's housing unit and the incident occurred in the NOI service." (ECF No. 4, at 17.) Hensley penalized Edwards with the loss of 90 days of good conduct time. Edwards was also subsequently transferred to a higher security level prison, where he was placed in segregation for 60 days.

Edwards appealed the conviction. Defendant Holloway, as warden, reviewed the tape recording of the hearing and the documentation and issued a four-page memorandum, upholding the conviction. Defendant Hinkley, as regional administrator, upheld the warden's findings.

Edwards filed this § 1983 action, seeking monetary damages and injunctive relief to expunge the 102 conviction from his record and order his transfer to a lower security facility outside of western Virginia. Edwards states in his complaint that "a sharpened instrument was never found on [his] person." (ECF No. 1, at 4.) He alleges the following due process violations during the disciplinary proceedings: (a) the disciplinary report did not state the location where the officer found the weapon, describe the weapon's appearance, indicate the disposition of the weapon, or identify other officer(s) who witnessed its discovery, all of which hindered Edwards in preparing his defense; (b) the hearing officer did not allow Edwards to make a statement about the recommended penalty, did not notify him of his right to appeal or the required paperwork to

do so, and found Edwards guilty of the offense based on the reporting officer's testimony, which was inaccurate, insufficient, and false; and (c) Holloway and Hinkley refused to order a rehearing, despite noting procedural errors.

Defendants have filed a motion for summary judgment, to which Edwards has responded. Because the court concludes that Edwards' claims must be summarily dismissed on other grounds, however, the defendants' motion and Edwards' requests for further discovery related to that motion will be summarily dismissed as moot.

II

It is well established that prison disciplinary proceedings which implicate a protected liberty interest, such as accumulated good conduct time, generally trigger federal due process protections, which Edwards claims he did not receive. See Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Edwards cannot proceed, however, with his § 1983 claims for damages related to his disciplinary conviction while that conviction stands in effect.

A state prisoner's claim for damages related to his criminal conviction is not cognizable under § 1983 where success of the action would implicitly question the validity of plaintiff's criminal conviction or the duration of his confinement, unless plaintiff can demonstrate that the conviction or sentence has been previously invalidated. Heck v. Humphrey, 512 U.S. 477, 487 (1994). The holding in Heck also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings. See Edwards v. Balisok, 520 U.S. 641, 646 (1997) (holding that a § 1983 claim for declaratory relief and money damages was barred, where the "principal procedural defect complained of" (a deceitful and biased decision maker) "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits"). In short, under Heck and its progeny,

a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

The success of Edwards' claims that defendants' actions deprived him of federally mandated due process protections during the disciplinary proceedings—such as adequate notice of the charge and sufficient evidence on which to convict—would necessarily imply the invalidity of the resulting disciplinary conviction and penalty. Therefore, Heck's favorable termination requirement applies here. Edwards provides no facts demonstrating that his institutional conviction has been invalidated or overturned through administrative proceedings or state or federal habeas corpus proceedings. Absent such evidence, Edwards' § 1983 due process claims for monetary damages or injunctive relief are barred under Heck, Balisok, and Wilkinson.[2] Further, to the extent that Edwards is seeking the expungement of the disciplinary conviction and return of his lost good conduct time, such relief is simply unavailable in a § 1983

---

[2] Defendants do not raise Heck and Balisok in their motion for summary judgment, arguing instead that they are entitled to immunity under various theories against his claims for monetary damages and that he has no actionable due process claims. As it is clear from Edwards' own allegations that success on his § 1983 due process claims against the defendants would imply the invalidity of the disciplinary conviction, however, the court can raise, sua sponte, the bar set forth in Heck and its progeny, and if warranted, dismiss the action under 28 U.S.C. § 1915A(b)(1) for failure to state a claim on which relief can be granted at this time. See, e.g., Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003) (affirming summarily dismissal under § 1915A(b)(1) of claims for monetary damages barred under Heck); Harris v. Martin, No. CIV.A. 1:14-15925, 2015 WL 66513 (S.D.W. Va. Jan. 5, 2015) (summarily dismissing wrongful disciplinary conviction claim under Balisok and § 1915A(b)(1)).

action.³  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (holding that habeas corpus is the exclusive remedy for a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release).

III

This court can liberally construe Edwards' current submission as a petition for a writ of habeas corpus under § 2254.  See Hamlin v. Warren, 664 F.2d 29, 30 (4th Cir. 1981) (noting court's authority to liberally construe pro se civil rights action as habeas corpus petition).  The court can also address the newly construed § 2254 petition on the merits, provided that it meets the threshold requirements for habeas actions under this section.  Haines v. Kerner, 404 U.S. 519 (1972).  Technically, Edwards' submission does not do so, because it offers no evidence that Edwards exhausted available state court remedies as required under § 2254(b)(1)(B).

In this case, however, a ruling on this question of exhaustion is not necessary to reach a decision that Edwards' due process claims are without merit.  A court may deny a § 2254 petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).  Furthermore, under Rule 4(b) of the Rules Governing § 2254 Cases, the court must summarily dismiss a § 2254 petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ."

---

³ Edwards also asserts that as a result of the defendants' actions related to his disciplinary conviction, he was transferred and segregated.  He does not allege that any of the defendants, personally, ordered his transfer or his segregated confinement at the new facility.  Therefore, he has stated no claim against them related to these events. See Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Furthermore, neither transfer to a higher-security facility nor temporary segregated confinement implicates any federally protected right so as to be actionable under § 1983.  See, e.g., Sandin v. Conner, 515 U.S. 472 (1995) (holding that inmate had no federally protected liberty interest in avoiding temporary segregated confinement); Meachum v. Fano, 427 U.S. 215 (1976) (holding that transfer of state prisoners from medium to maximum security prisons did not infringe due process rights).

-6-

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. Where inmates have a state statutory right to retain accumulated good conduct time absent serious misconduct, however, a disciplinary hearing to determine guilt or innocence of such misconduct must afford the inmate certain procedural protections: (1) advance written notice of the disciplinary charge at least 24 hours before a hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) "a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." Id. at 563-567, 563; see also Superintendent Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985) (discussing Wolff ). Procedural errors under the Wolff standard are subject to harmless error analysis; if there is no indication how an alleged error may have prejudiced a petitioner, habeas relief is not available. See Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004) (citing other cases). Furthermore, while state regulations may require more stringent procedural protections, "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." Brown v. Angelone, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)).

When an inmate brings a habeas petition to challenge the sufficiency of the evidence underlying a decision to revoke his good time credits for misconduct, the requirements of due process are met "if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Hill, 472 U.S. at 455 (internal quotation marks and citation omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

-7-

Case 7:14-cv-00495-GEC-RSB   Document 42   Filed 10/28/15   Page 7 of 10   Pageid#: 230

evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Edwards' first claim is that the disciplinary offense report ("DOR") did not provide adequate notice of the elements of the offense to allow for preparation of his defense. Specifically, he faults the reporting officer for failing to list the location of the strip search, a description of the sharpened instrument, and other officers who witnessed the offense. "The function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Wolff, 418 U.S. at 564. To prove a deprivation of due process based on an alleged failure to provide adequate written notice of the offense, however, an inmate must demonstrate that he was prejudiced by the defect. See Blount v. Johnson, No. CIV A 706CV00545, 2007 WL 1225993, at *3 (W.D. Va. Apr. 24, 2007) (citing Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997); Griffin-Bey v. Bowersox, 978 F.2d 455, 456 (8th Cir. 1992); White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (9th Cir. 1988)).

The information on the DOR might have been more precise and complete. Edwards has not demonstrated, however, any prejudice to his defense resulting from the alleged defects. It is undisputed that the DOR contained the offense title, the date and time of the offense, and the name of the officer who discovered the sharpened instrument—Defendant Eads. This information was sufficient to put Edwards on notice of the strip search to which the DOR referred, and his questioning of Eads during the hearing clearly displayed his personal knowledge of that search. Moreover, Edwards does not present the content of any witness testimony or other evidence beneficial to his defense that he was unable to introduce at the hearing because of the alleged defects in the DOR. For the stated reasons, the court concludes

that Edwards has not stated a viable due process claim for habeas relief, based on any inadequacy of the notice provided to him.

Edwards also contends that the evidence on which Hensley based the finding of guilt was inconsistent and inaccurate, and therefore, insufficient. This argument revolves around Eads' varying statements about the location of the strip search and his failure to describe or present the item found in Edwards' pants cuff. On both of these points, however, some evidence supported the finding of guilt. First, the hearing officer found that Eads' testimony about the differing locations, corroborated by Edwards' own statements, was credible and resolved any inconsistencies about where the offense occurred. Second, the language of the 102 disciplinary offense merely prohibits possession of a "weapon [or] sharpened instrument." (ECF No. 26-1, at 8.) Eads testified that he found such an item in Edwards' pants cuff. No additional factual details about the item Eads found were required to support a finding that Edwards was guilty of the 102 charge. Moreover, Edwards had an opportunity to question Eads about the item and to offer contradictory testimony of his own, denying possession of any such item or explaining why an item he may have possessed did not qualify as a weapon or sharpened instrument. Edwards cannot rest claims of procedural defects on his unsuccessful strategic decision to attempt to disqualify Eads' notice of the location of the offense, rather than to question Eads about the offense itself or provide evidence to contradict Eads' testimony. For the stated reasons, the court concludes that Eads' testimony provided some evidence in support of Hensley's finding that Edwards was guilty of the 102 offense, and that Edwards has thus failed to state any ground for habeas relief based on insufficiency of the evidence.

Edwards also complains about other procedural matters during the disciplinary proceedings: no evidence about the appearance or disposal of the weapon, no chance to argue

about the appropriate penalty, no express statement from Hensley about the right to appeal or the procedures by which to do so, and various deficiencies during the disciplinary appeals. None of these procedures is included in the limited, federally mandated procedural rights recognized in Wolff. Therefore, even if such procedural errors under state regulations occurred, they do not provide any basis for federal habeas relief. Brown, 938 F. Supp. at 344.

IV

In conclusion, Edwards' § 1983 due process claims for monetary and injunctive relief are barred under Heck, Balisok, and Wilkinson. Edwards offers no evidence that his disciplinary conviction has been set aside or overturned as unlawful by any state administrative body or court, and this court finds no merit to his due process claims under § 2254. Thus, he has not established that his disciplinary conviction violated his federal due process rights, and his § 1983 action must be summarily dismissed 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief can be granted. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 28th day of October, 2015.

/s/ Glen E. Conrad
Chief United States District Judge